**D.R., a minor, by and through her Parents and Guardians Ad Litem COURTNEY R. and Jennifer R., Plaintiff,**

v.

**ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, a public entity, Defendants.**

**No. CV 10–04751 SJO (MANx).**

United States District Court, C.D. California.

Oct. 8, 2010.

Edward Gary Burg, Jessica Ilene Shpall, Manatt Phelps and Phillips LLP, Los Angeles, CA, for Plaintiff.

Alan Fredrick Varner, Sylvester Oppenheim & Linde, Encino, CA, for Defendant.

**ORDER GRANTING PRELIMINARY INJUNCTION; ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION; ORDER SUSTAINING IN PART AND OVERRULING IN PART EVIDENTIARY OBJECTIONS** [Docket Nos. 10, 12, 19]

S. JAMES OTERO, District Judge.

This matter is before the Court on Plaintiff D.R.'s ("Plaintiff")[1] Motion for Preliminary Injunction, filed on July 30, 2010 ("Pl.'s Mot."). Defendant Antelope Valley Union High School District ("Defendant") filed an Opposition on August 17, 2010 ("Def.'s Opp'n"), to which Plaintiff replied on August 23, 2010 ("Pl.'s Reply"). Defendant filed a Motion to Dismiss for Lack of Jurisdiction on August 13, 2010 ("Def.'s Mot."). Plaintiff filed an Opposition on August 23, 2010 ("Pl.'s Opp'n"), to which Defendant replied on August 27, 2010 ("Def.'s Reply"). In addition, Plaintiff filed Evidentiary Objections in Support of her Motion for Preliminary Injunction on August 23, 2010 ("Pl.'s Obj."). The Court held oral arguments for the Motions on October 7, 2010. For the following reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED,** Defendant's Motion to Dismiss is **DENIED,** and Plaintiff's Evidentiary Objections are **SUSTAINED IN PART AND OVERRULED IN PART.**

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff is a 17–year old high school senior at Eastside High School in Lancaster with Charcot–Marie–Tooth Disease ("CMT"), a genetic progressive neurological disorder that affects the limbs, particularly her legs. (Complaint ("Compl.") ¶ 3;

Declaration of D.R. in Support of Pl.'s Mot. ("D.R. Decl.") ¶ 3.) Plaintiff alleges that she has reduced hand and leg strength because of her CMT disorder, and ascending stairs is impossible for her. (Pl.'s Mot. 2:10–16; D.R. Decl. ¶¶ 7, 8.) Therefore, the disorder denies her access to the second floor of her high school, which was recently constructed and opened in August 2009. (Compl.¶ 1.) Most of Plaintiff's classes are held in a two-story "Classroom Building," which has four elevators that are kept locked and can only be operated by an elevator key. (Pl.'s Mot. 2:25–3:4.) The school library, career center, and classrooms are located on the second floor of the Classroom Building. (D.R. Decl. ¶ 13.)

Plaintiff began attending Eastside High School in August of 2009 as a junior. (Pl.'s Mot. 2:22–24.) Previously, Plaintiff had spent her freshman and sophomore years at another school in the same district that consisted of only one-story. (D.R. Decl. ¶ 11.) At the end of her freshman year, Plaintiff received a Rehabilitation Act Section 504 ("Section 504") and American with Disability Act ("ADA") Accommodation Plan, which allowed her, among other things, extra time between classes and to complete her assignments. (D.R. Decl. ¶ 11.) Soon after enrolling at Eastside High School, Plaintiff's mother requested a meeting to revise Plaintiff's Section 504/ADA Plan to include elevator access. (Pl.'s Mot. 3:27–4:2.) Defendant revised Plaintiff's Section 504/ADA Plan to have staff or teachers make elevators available for her, but denied Plaintiff's request for an elevator key. (Pl.'s Mot. 4:2–7.)

No evidence has been provided to show that Plaintiff is less than a good student.

---

1. Plaintiff's name should be redacted and excluded from all documents, exhibits, and attachments filed to the Court because she is a minor; she may only be identified by her initials. *See* L.R. 79–5.4(b). Both parties are in violation and should scrupulously adhere to Local Rule 79–5.4 in all future filings.

(*See generally* Def.'s Opp'n.) Plaintiff's grade point average ("GPA") through her junior year is 3.8.[2] (Pl.'s Mot. 4:11.) She is also a member of "Lion Leaders," a student leadership group. (Pl.'s Mot. 6:9–11.) Through the student group, Plaintiff volunteers at school functions. (*See* D.R. Decl. ¶ 42.) She also attends school activities. (*See* D.R. Decl. ¶ 43.)

In the fall of 2009, Plaintiff frequently missed between 10 to 45 minutes of class time while waiting for a staff or teacher to provide access to an elevator. (D.R. Decl. ¶ 19.) She further missed class time to use the restroom because she could not do so between classes. (Pl.'s Mot. 3:23–25.) The tardiness and disruptions forced her to drop two Advance Placement ("AP") classes. (Pl.'s Mot. 4:13–16.) Plaintiff sometimes called her mother and her mother would have to call the school so that someone with an elevator key could be dispatched to unlock the elevator. (Declaration of Jennifer R. in Support of Pl.'s Mot. ("Jennifer R. Decl.") ¶ 7.)

After the denial of the request for an elevator key, Plaintiff's mother retained counsel. (Jennifer R. Decl. ¶ 11.) Plaintiff's counsel wrote a demand letter on February 12, 2010 and held a meeting with the Defendant on March 2, 2010. (Pl.'s Mot. 5:1–7.) On March 9, 2010, Plaintiff requested a due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"). (Def.'s Mot. 1:18–19.) Plaintiff also requested a Section 504 due process hearing on March 26, 2010. (*See* Def.'s Mot. 1:19–21.) At a meeting on March 17, 2010, Plaintiff's mother allegedly refused to authorize Defendant to assess Plaintiff's eligibility under IDEA and Defendant purportedly provided a "Mobility Plan" that created a "Mobility Liaison" to open the elevators for Plaintiff. (*See* Def.'s Mot. 1:25–2:2; Pl.'s Mot. 5:9–17.) On April 28, 2010, Defendant moved to dismiss Plaintiff's due process complaint and Administrative Law Judge Susan Ruff ("ALJ Ruff") granted the motion on the ground that the Office of Administrative Hearings ("OAH") did not have jurisdiction over the claims. (Def.'s Mot. 2:4–9.)

After Defendant implemented its Mobility Plan, Plaintiff still missed class time because the Mobility Liaison was late, absent, or without an elevator key. (D.R. Decl. ¶¶ 37, 38, 40.) Plaintiff rejected the accommodation to have a full-time Mobility Liaison because Plaintiff felt self-conscious and it brought unwanted attention and scrutiny. (*See* Exhibit ("Ex.") I to Declaration of Alan Varner ("Varner Decl.") in Support of Def.'s Opp'n.) Plaintiff began her senior year on August 9, 2010. (Pl.'s Mot. 6:19.) On June 25, 2009, Plaintiff filed suit against Defendant for violations under the ADA, Section 504, and the California Unruh Act ("Unruh Act"). (*See generally* Compl.) Plaintiff moved for a preliminary injunction on July 30, 2010 and prayed the Court to enjoin Defendant to provide her with an elevator key. (Pl.'s Mot. 19–20.)

## II. *DISCUSSION*

### A. *Legal Standard*

#### 1. Mandatory Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). In the Ninth Circuit, preliminary

---

**2.** At the October 7, 2010 hearing, the Court was informed that Plaintiff's weighted GPA is 4.1 and that Plaintiff is in the top four percent of her graduating class.

injunction is also appropriate if the plaintiff can show that "serious questions going to the merits were raised and the balance of hardship tips sharply towards the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell,* 622 F.3d 1045, 1052 (9th Cir. 2010) (holding that the sliding scale test remains viable so long as plaintiff can satisfy other factors contained in *Winter*) (citation omitted). A mandatory injunction, which commands performance of an act, is particularly disfavored and a district court should deny relief unless the facts and law clearly favor the moving party. *See Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1320 (9th Cir.1994). The Court, however, is fully empowered to grant mandatory injunctions, especially when prohibitory orders may be ineffective or inadequate. *See Katie A., ex rel. Ludin v. Los Angeles County,* 481 F.3d 1150, 1156–57 (9th Cir.2007) (unnecessary institutionalization).

## 2. The Individuals with Disabilities Education Act

 IDEA is a "comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tucson Unified Sch.* *Dist.,* 967 F.2d 1298, 1300 (9th Cir.1992) (citation omitted). To receive financial assistance, state and local educational agencies must ensure that children with disabilities are guaranteed specified procedural safeguards, such as an impartial due process hearing and an appeal. *See Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1274 (9th Cir.1999); 20 U.S.C. §§ 1415(f), (g). The IDEA does not restrict or limit the rights of disabled students or their parents under other statutes like the ADA and Section 504. 20 U.S.C. § 1415 (*I*). The IDEA, however, requires administrative exhaustion prior to the filing of a civil action "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415 (*I*).[3] "To qualify under IDEA, a child must satisfy three criteria: (i) [s]he must suffer from one or more of the categories of impairments delineated in IDEA, (ii) [her] impairment must adversely affect [her] educational performance, and (iii) [her] qualified impairment must require special education and related services." *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 899 (9th Cir.1995). California adopted IDEA with notable changes, one of which is the exclusion of children who can obtain "a free appropriate public education" through modification of the regular school

---

**3.** The exhaustion requirement of IDEA is not required in certain circumstances. Where the plaintiff is not seeking relief "also available" under the IDEA, exhaustion is not a prerequisite to the filing of a civil action. *Blanchard v. Morton Sch. Dist.,* 420 F.3d 918, 922 (9th Cir.2005) (emotional distress injuries and lost income for parent); *but see Robb v. Bethel Sch. Dist.,* 308 F.3d 1047, 1049–50 (9th Cir.2002) (plaintiff cannot avoid exhaustion requirement merely by limiting relief to money damages, which is not available under IDEA). Exhaustion is not required where educational issues are not at dispute. *See Witte,* 197 F.3d at 1275 (where claim for monetary damages could proceed because all educational issues had already been resolved);

*Blanchard,* 420 F.3d at 921 (recognizing that IDEA's administrative remedies cannot compensate injuries that are "completely non-educational"). Similarly, when the validity of a blanket policy as a matter of law is at issue, plaintiff is not restricted by the exhaustion requirement. *Christopher S. v. Stanislaus County Office of Educ.,* 384 F.3d 1205, 1211 (9th Cir.2004) (shorter school day for all autistic students). Lastly, exhaustion is not required where it would be futile. *See Kerr Ctr. Parents Assoc. v. Charles,* 897 F.2d 1463, 1470 (9th Cir.1990). "Where the IDEA's ability to remedy a[n] ... injury is unclear, exhaustion should be required...." *Robb,* 308 F.3d at 1050.

program. *See* Cal. Educ. Code §§ 56026, 56040.

### 3. Subject Matter Jurisdiction

 The Ninth Circuit has held that "[i]f a plaintiff is required to exhaust [IDEA] administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiff's claim." *Blanchard v. Morton Sch. Dist.*, 420 F.3d 918, 920–21 (9th Cir.2005) (citing *Witte*, 197 F.3d at 1274). Recent Supreme Court decisions, however, "raise questions about the extent of this rule and its continuing vitality." *H.B. ex rel. P.B. v. Las Virgenes Unified Sch. Dist.*, 239 Fed.Appx. 342, 344 (9th Cir.2007) (unpublished); *see Payne v. Peninsula Sch. Dist.*, 598 F.3d 1123, 1125 n. 2 (9th Cir.2010) (stating that "[i]t is unclear whether the failure to exhaust is still a jurisdictional matter").[4] The Ninth Circuit, nevertheless, has refused thus far to decide the issue. *See Payne*, 598 F.3d at 1125 n. 2 (stating "we decline to reach it"). As such, district courts in the Ninth Circuit have continued to treat failure to exhaust remedies under IDEA as a bar to subject matter jurisdiction. *See, e.g., Ruecker v. Sommer*, 567 F.Supp.2d 1276, 1301 (D.Or.2008); *Andrew W. v. Menlo Park City Sch. Dist.*, 2010 WL 3001216, at *3 (N.D.Cal. July 29, 2010).

### B. *Plaintiff Does Not Qualify for Relief Under IDEA and the Education Code.*[5]

 Both parties do not dispute that Plaintiff has CMT and that an orthopedic impairment is delineated in IDEA. (Def.'s Opp'n 6:2–5; Pl.'s Reply 1:18–24.) Plaintiff, however, alleges that she is not entitled to relief under IDEA because her orthopedic impairment does not affect her educational performance. (Pl.'s Reply 2:21–23.) Plaintiff asks the Court to deem her injury as "not educational in nature" and outside the purview of IDEA. (Pl.'s Opp'n 2–6.) Defendant notably does not argue that Plaintiff is eligible for services under IDEA, but asserts that Plaintiff refused to be assessed and prevented the administrative process to go forward. (Def.'s Opp'n 5:13–7:6.) Defendant also contends that IDEA is able to provide redress on mobility concerns. (Def.'s Opp'n 5:15–17.)

### 1. Plaintiff's CMT Adversely Affects Her Educational Performance.

Plaintiff's academic success cannot mask that her CMT does adversely affect her educational performance. *See* 34 C.F.R. § 300.8(c)(8). Plaintiff missed substantial classroom time because she had to wait for a school representative to unlock the elevator door. (Pl.'s Mot. 3:20–22.) She had to further miss class time to use the restroom because she could not do so between classes. (Pl.'s Mot. 3:23–25.) The disruptions forced her to drop two AP classes. (Pl.'s Mot. 4:13–16.) Plaintiff may argue that these adverse effects were caused by the Mobility Liaison rather than her CMT,

---

**4.** In *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the U.S. Supreme Court held that failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act ("PLRA"). The Ninth Circuit had previously determined that "[t]he PLRA's exhaustion requirement is framed in language similar to IDEA's." *Robb*, 308 F.3d at 1051. If failure to exhaust administrative remedies proscribed under IDEA is an affirmative defense, as it is under the PLRA, then it must be raised in a responsive pleading, Fed. R. Civ. P. 8(c)(1), or in an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Brown v. Valoff*, 422 F.3d 926, 939 n. 13 (9th Cir.2005).

**5.** Unless otherwise specified, all references to the Education Code refers to the California Education Code.

but such argument misses the point that the classroom disruptions occurred because her orthopedic impairment prevents her from using the stairs.

Plaintiff's use of non-special education services under Section 504 confirms that the disability adversely affects her performance. Plaintiff was granted a 5–minute grace period to get to her class to avoid crowds of students that could knock her over. (D.R. Declaration for Pl.'s Reply ("D.R. Supp. Decl.") ¶ 5.) In May 2008, Plaintiff obtained several accommodations, including: (1) extra time to go to and from class; (2) extra set of textbooks to keep at home so she did not have to carry them around; and (3) permission to see the Health Office during extreme weather conditions. (Ex. B to Jennifer R. Decl. ¶ 4.) Plaintiff also obtained extra time to complete assignments. (D.R. Decl. ¶ 11.) "But for" these non-special education services, Plaintiff may not have an impressive 3.8 GPA. *See Yankton Sch. Dist. v. Schramm,* 93 F.3d 1369, 1375 (8th Cir. 1996) (finding impairment had an adverse impact); *but see Ashli C. v. Hawaii,* 2007 WL 247761, at *9 (D.Haw. Jan. 23, 2007) (student not harmed if able to learn and function at an average level in a regular classroom).

### 2. Plaintiff, However, Does Not Need Special Education or Related Services.

Though her orthopedic impairment adversely affects her education, Plaintiff does not meet an essential qualification to obtain remedy under IDEA; she cannot show a need for special education. IDEA expressly provides that a child must need special education and related services. 20 U.S.C. § 1401(3)(A); Cal. Educ. Code § 56026(a). To determine "eligibility and educational need," a court may consider "a variety of sources, including aptitude and achievement tests … and adaptive behav-

ior." 34 C.F.R. § 300.306(c)(1)(i). A court may also consider classroom achievement and grades. *See Hood v. Encinitas Union Sch. Dist.,* 486 F.3d 1099, 1106–07 (9th Cir.2007).

■ The Court is mindful that "[it] should not substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Seattle Sch. Dist., No. 1 v. B.S.,* 82 F.3d 1493, 1499 (9th Cir.1996) (citation omitted). "Because Congress intended states to have the primary responsibility of formulating each individual child's education, [the Court] must defer to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of the states' administrative bodies." *Amanda J. v. Clark County Sch. Dist.,* 267 F.3d 877, 888 (9th Cir.2001) (quoting *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206–08, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). Nonetheless, "whether or not a child is entitled to receive services under IDEA is statutorily defined and not a matter of educational policy." *Yankton,* 93 F.3d at 1376 n. 9. Therefore, "a court determines … [whether] the requirements of the Act have been met, [while] questions of methodology are for resolution by the States." *Rowley,* 458 U.S. at 208, 102 S.Ct. 3034; *see also W.H. ex rel. B.H. v. Clovis Unified Sch. Dist.,* 2009 WL 1605356, at *21 (E.D.Cal. June 8, 2009) ("This Court has the authority to determine whether a Student is eligible for special education and related services under the IDEA.").

The undisputed facts of this matter support the conclusion that Plaintiff does not require special education and related services. Plaintiff takes rigorous AP classes with the general student body. (*See* D.R. Decl. ¶ 21.) She has a stellar academic record, with a 3.8 GPA. (D.R. Decl. ¶ 16.) Plaintiff is also active in the student body as a member of the student group Lion

Leaders. (Pl.'s Mot. 6:9–11.) Defendant provides no evidence that Plaintiff is academically or socially failing to adjust and compete in a non-special education classroom setting. (*See generally* Def.'s Opp'n.) Thus, Plaintiff does not meet the definition of a disabled child in need of special education and related services.[6]

The Court is aware of *Yankton School District v. Schramm,* 93 F.3d at 1376, where the Eighth Circuit held that a student with orthopedic impairment was eligible under IDEA, even though the student enrolled and succeeded in a regular curriculum. The appellate court determined that modifications to a regular classroom program pursuant to Section 504, such as mobility assistance, provision of multiple text books, and shortening writing assignments, constituted "specialized instruction and services." *See id.* at 1375. The court found that the student was not only eligible under IDEA, but also that she needed the special education. *See id.* at 1375–76.

The Court respectfully declines to follow *Yankton*'s non-binding ruling because it conflicts with statutory language and Ninth Circuit case law. Special education is "specially designed *instruction* ... to meet the unique needs of individuals with exceptional needs...." Cal. Educ. Code § 56031 (emphasis added). Related services means "transportation, and such developmental, corrective, and other supportive services ... as may be required to assist an individual with exceptional needs *to benefit from special education* ...." Cal. Educ. Code § 56363 (emphasis added). An individual with exceptional needs is one who "requires instruction and services which cannot be provided with modi-

fication of the regular school program in order to ensure that the individual is provided a free appropriate public education...." Cal. Educ. Code § 56026(b). "This language [from the Education Code] makes clear that, when possible, a school may address a child's needs through modification of the regular classroom program without [resorting to remedies under IDEA]." *Ashli,* 2007 WL 247761, at *10 n. 3. When a child's needs can be adequately addressed through non-special educational services, the student is not eligible for IDEA. *See Hood,* 486 F.3d at 1110 (holding that a California student was not eligible for IDEA because she can be accommodated in a general classroom); Robert A. Garda, *Who Is Eligible Under the Individuals with Disabilities Education Improvement Act?,* 35 J.L. & Educ. 291, 308 n. 73 (2006) (citing *Ludington Sch. Dist.,* 35 IDELR 137, 140 (Mich. SEA 2001) (child not eligible for IDEA because his "needs can be met in the regular education setting with some modifications"); *Corvallis Sch. Dist. 509J,* 28 IDELR 1026, 1038 (Or. SEA 1998) ("Thus, when related services and accommodations allow a student to make progress in the regular education program, as indicated by grades ... there is no need for special education and therefore no eligibility under the IDEA.")).

The factual record shows that Plaintiff's needs were being met through modifications like extra time between classes and to turn in work, an extra set of textbooks, and permission to sit on a chair rather than the floor. (*See* Jennifer R. Decl. ¶ 4; D.R. Decl. ¶ 16.) These were not special, individualized instructions; the modifica-

---

**6.** It is not inconsistent to find that Plaintiff's educational performance has been adversely affected by her impediment, but that Plaintiff nonetheless does not need special education or related services. *See Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.,* 503 F.3d 378,

383–84 (5th Cir.2007) (holding that, even if a disability adversely affected the student's educational performance, he was ineligible under IDEA because of his academic and social progress).

tions therefore cannot constitute special education. *See* Garda, 35 J.L. & Educ. at 324–25 nn. 131–33 (citing *Arlington Cent. Sch. Dist.*, 35 IDELR 205 (N.Y. SEA 2001) (finding that a child who needed more time to complete assignments did not need special education); *St. Clair County Bd. of Educ.*, 29 IDELR 688 (Ala. SEA 1998) (finding that a child with an orthopedic impairment who needed assistance to load and unload from a school bus, carry books and materials, and use the restroom was not eligible under IDEA because she did not need special education)). The minor changes may constitute related services. Even if the modifications are interpreted as related services, however, Plaintiff would still be ineligible under IDEA because a child who "only needs a related service and not special education . . . is not a child with a disability" under IDEA. 34 C.F.R. § 300.8(a)(2)(i); *see also Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 894, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984) ("[T]he need for what otherwise might qualify as a related service does not create [eligibility]."); *Marshall Joint Sch. Dist. No. 2 v. C.D.*, 616 F.3d 632, 641–42 (7th Cir.2010) (holding that physical and occupational therapy are related services and a student's need for them does not create eligibility under IDEA).

The record also reveals that the current modification to provide a Mobility Liason is not meeting Plaintiff's needs. (*See* D.R. Decl. ¶¶ 37, 38, 40.) Plaintiff recently began attending the new school and her needs have changed. (Jennifer R. Decl. ¶ 5.) Nonetheless, the failure of the current modification does not make Plaintiff eligible under IDEA. The Education Code makes clear that an individual with exceptional needs is one whose impairment requires special education and whose needs "cannot be [met] . . . with modification[s]." Cal. Educ. Code § 56026(b). Therefore, if a modification *is* available to meet Plain-

tiff's needs, she does not qualify as an individual with exceptional needs and is ineligible under IDEA. The provision of an elevator card is such a modification that can meet Plaintiff's needs.

Accordingly, Plaintiff does not meet the statutory definition of a disabled child under IDEA or an individual with exceptional needs under the Education Code.

### 3. Defendant's Claim for Judicial Estoppel Contradicts the Facts.

Defendant asserts that Plaintiff should be judicially estopped from arguing that she is ineligible for special education because Plaintiff filed a request for an IDEA due process hearing. (Def.'s Reply 2:1–17.)

 Judicial estoppel is an equitable doctrine invoked by a court at its discretion to prevent parties from deliberately changing positions according to the exigencies of the moment, and thereby, demeaning the integrity of the judicial process. *See New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The doctrine cannot be reduced to an exhaustive formula. *Id.* at 750, 121 S.Ct. 1808. Three factors, however, generally determine whether a court should apply judicial estoppel: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party achieved success in the prior proceeding; and (3) whether the party asserting an inconsistent position would achieve an unfair advantage if not estopped. *United Steelworkers of Am. v. Ret. Income Plan for Hourly–Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir.2008).

 Defendant's claim for judicial estoppel contradicts Defendant's own evidence. First, it is not clear that Plaintiff's

request for a due process hearing under IDEA is inconsistent with her assertions before the Court. In both proceedings, Plaintiff argued that she does not need special education and related services. (*Compare* Ex. F to Brook Decl. *with* Pl.'s Reply 1–2.) Plaintiff also expressly stated that she filed the action "to be certain that [Plaintiff had] exhausted all administrative remedies available under [IDEA] . . . ." (Ex. F to Brook Decl.) In her Reply, Plaintiff argues in the alternative that, even if she is eligible under IDEA, she has exhausted all her remedies or is exempt by an established exemption. (Pl.'s Reply 4:1–6.) Second, Plaintiff did not achieve success in the prior proceeding. Rather, the Defendant's motion to dismiss was granted by ALJ Ruff. (Ex. F to Brook Decl.) Because Defendant fails to demonstrate the first two elements of the judicial estoppel analysis, the doctrine does not apply and the Court need not reach the third element of unfair advantage.

### 4. Defendant's Actions Support a Finding That It Never Considered Plaintiff Eligible for IDEA.

Defendant posits that Plaintiff's mother "refused to have plaintiff undergo any assessment by the [Defendant] to determine eligibility." (Def.'s Opp'n 7:1–2.) Defendant further alleges that it "does not have recourse if [a] parent refuses the initial assessment . . . [and that] [w]ithout a determination of eligibility under IDEA, the administrative process cannot go forward." (Def.'s Opp'n 7:3–4.) Defendant, thus, asks the Court to find that Plaintiff abandoned the administrative process because, among other reasons, educational experts could determine that Plaintiff is eligible for special education. (*See* Def.'s Reply 2–3.) The factual record persuades the Court to find otherwise.

Defendant's actions support a finding that it never considered Plaintiff eligible under IDEA. Pursuant to IDEA's "child find" provision, Defendant has a duty to identify and evaluate children who are suspected of having a qualifying disability within a reasonable time after school officials are placed on notice. *See Torrance Unified Sch. Dist. v. Magee*, 2008 WL 4906088, at *1 n. 1 (C.D.Cal. 2008); *K.H. v. Mt. Diablo Unified Sch. Dist.*, 2006 WL 1867679, at *5 (N.D.Cal. July 6, 2006); *O.F. ex rel. N.S. v. Chester Upland Sch. Dist.*, 246 F.Supp.2d 409, 417–18 (E.D.Pa.2002). Defendant has been aware of Plaintiff's CMT since she began attending high school in the district and was provided a Section 504/ADA Plan on May 8, 2008. (Jennifer R. Decl. ¶ 4.) Since 2008, Defendant has made no attempts at assessing Plaintiff to determine her eligibility under IDEA. (*See generally* Def.'s Opp'n; Def.'s Mot.) Even when Plaintiff requested a due process hearing under IDEA, rather than seek to determine Plaintiff's eligibility, Defendant moved to dismiss. (Ex. F to Brook Decl.) Assuming, *arguendo*, that Plaintiff's mother obstructed the administrative process, Defendant could have filed a complaint to the OAH to address the parent's refusal. Defendant is wrong in claiming that it had no recourse because ALJ Ruff expressly stated that it had jurisdiction to hear a complaint based on the "refusal to initiate or change the identification, assessment, or educational placement of a child . . . [and] the refusal of a parent or guardian to consent to an assessment of a child . . . ." (Ex. F to Brook Decl. (citing Cal. Educ. Code § 56501).) These acts either show a breach of the "child find" duty imposed by IDEA or a conscious determination by Defendant that Plaintiff is not eligible for IDEA; the Court finds the latter proposition persuasive. This factual finding is further supported by the testimony of

Plaintiff's mother, submitted through a declaration under penalty of perjury, that a representative of Defendant's stated that Plaintiff was not eligible for special education because her test scores were normal and there was no other basis for believing she was eligible. (Jennifer R. Decl. in Support of Pl.'s Opp'n. ¶ 2.) This testimony was not disputed by Defendant. (*See generally* Def.'s Reply.)

 Thus, in fact and law, Plaintiff is not a child with disability as defined under IDEA or an individual with exceptional needs as defined under the Education Code. Since Plaintiff is not eligible for relief under IDEA, she does not need to administratively exhaust her remedies to assert claims under Section 504, the ADA, and the Unruh Act. *See Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir.1999). Her Section 504 and ADA claims also arise under federal laws. *See* U.S. CONST. art. III, § 2. Plaintiff's Unruh Act claim is so related to her Section 504 and ADA claims that they form the same case and controversy. *See* 28 U.S.C. § 1367(a). Accordingly, the Court DENIES Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

C. *Preliminary Injunction Is Proper Because Plaintiff Has Shown Serious Questions Going to the Merits and the Balance of Hardship Tips Sharply in Her Favor.*

1. Plaintiff Will Suffer Irreparable Harm if Preliminary Injunction Is Not Granted.

 Plaintiff has suffered and will continue to suffer irreparable harm if preliminary injunction is not granted. She frequently missed between 10 to 45 minutes of class while waiting for a school representative to let her use the elevators. (D.R. Decl. ¶ 19.) These absences from the classroom have detrimentally affected her academic performance and may jeopardize her stellar academic record and post-graduation prospects. (*See* D.R. Decl. ¶¶ 21–23.) Even after the Defendant implemented its Mobility Plan, Plaintiff still missed class time because the Mobility Liaison was late, absent, or without an elevator key. (D.R. Decl. ¶¶ 37, 38, 40.) Plaintiff also cannot participate in extracurricular activities to the same extent as other students because of her CMT and the inadequate accommodation provided by the Defendant. She could not attend student club activities and social events on the second floor. (D.R. Decl. ¶¶ 41, 42.) Plaintiff continues to have no access to the school library. (*See* D.R. Decl. ¶ 44.) Moreover, Plaintiff suffers irreparable harm to her emotional development. She must choose between two unacceptable options: (1) having to helplessly find an individual with an elevator key anytime she may have to go downstairs or upstairs (D.R. Decl. ¶ 24); or (2) have a Mobility Liaison that follows her to each of her classroom, alienating Plaintiff and providing fodder for other children to ostracize her (Ex. I to Varner Decl.). These options likely would unduly affect Plaintiff's self worth and sense of independence.

Defendant unconvincingly challenges the factual support provided by Plaintiff regarding irreparable harm. Defendant uses numerous hearsay to dispute that Plaintiff suffers from CMT by including statements like "Plaintiff *was observed* leading a congo line . . . and washed [sic] cars at a student car wash." (Def.'s Opp'n 13:3–5.) Since 2008, Defendant has conceded to Plaintiff's CMT disability claim by implementing Section 504 and ADA Plans, for which counselors, psychologists, and teachers had the opportunity to review Plaintiff's CMT status. (Ex. B to Jennifer R. Decl.) Defendant cannot now disingenuously argue that Plaintiff does not suffer

from CMT. More importantly, those statements lack foundation and must be disregarded.[7] The remaining factual disputes are not of consequence because, even assuming that Defendant's alleged facts are true, the proffered facts do not lessen the ongoing irreparable harm to Plaintiff. Accordingly, Plaintiff has met her burden of showing that she will suffer irreparable harm if the injunction is not granted.

2. **Plaintiff Is Likely to Succeed on the Merits or, at a Minimum, Raises Serious Questions on the Merits of Her Claims.**

 To establish a violation under Title II of the ADA, a plaintiff must show that: "(1) she is a qualified individual with a disability; (2) she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, [sic] and (3) such exclusion or discrimination was by reason of her disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.2002) (citation omitted). Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act[8] ... courts have applied the same analysis to claims brought under both statutes...." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir.1999) (citations omitted).

a. **Though Ineligible Under IDEA, Plaintiff's CMT Is a Disability Under the ADA and Section 504.**

 Plaintiff is a qualified individual with a disability under the ADA and Section 504. *See* 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B). Plaintiff's CMT physically impairs one or more major life activities, such as walking, standing, writing, and climbing stairs. (Jennifer R. Decl. ¶ 2.) She is a "qualified individual with a disability" because, as a 17–year old high school student who resides in Lancaster, she meets the eligibility requirements to receive a public education provided by Defendant. *See* Cal. Const. art. 9, § 5 (system of common schools). Defendant does not expressly dispute Plaintiff is a qualified individual with a disability under the ADA or handicapped as defined by Section 504. (*See generally* Def.'s Opp'n.)

b. **Plaintiff Was Excluded from Participation in Defendant's Services, Programs, and Activities.**

Plaintiff was excluded from class time, student club meetings, and school functions. (D.R. Decl. ¶¶ 19, 37, 38, 40, 41, 42.) Defendant does not dispute these exclusions, but argue that *some* of the exclusions were due to Plaintiff's own acts. For instance, without evidence, Defendant argues that Plaintiff is tardy to her classes because she socializes with friends. (Def.'s

---

7. The Court sustains Plaintiff's evidentiary objections number two, three, and five because evidence sought to be excluded is hearsay and lacking proper foundation. (*See generally* Pl.'s Obj.) The elevator logs, sought to be excluded by objection number 2, do not qualify as business records because "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid. 803(6). The policy to maintain elevator logs was implemented in February 2010 (Cook Decl. ¶ 9), near the date Plaintiff sent a demand letter (Ex. F to Declaration of Edward G. Burg for Pl.'s Mot.). The

logs were made in anticipation of litigation. Objections number one and four are overruled.

8. To establish a violation of Section 504, a plaintiff must show that: "(1) she is handicapped within the meaning of the [Rehabilitation Act]; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Lovell*, 303 F.3d at 1052.

---

Opp'n 12:17–19.) Defendant also alleges that some of the exclusions have been remedied. As examples, Defendant notes that the Lion Leaders student club will no longer meet on the second floor and the Career Services Center has been relocated. (Def.'s Opp'n 12:21–25.)

Defendant's arguments are misplaced. Defendant does not dispute the very specific and credible allegations made by Plaintiff of her exclusions; such as, on February 18, 2010, no one was able to help her gain access to the elevator until 8:42 a.m. because another student needed attention. (D.R. Decl. ¶ 25.) Defendant does not refute Plaintiff's claim that, on April 1, 2010, Plaintiff's Mobility Liaison was absent, which caused Plaintiff to be 14 minutes late to class. (D.R. Decl. ¶ 31.) The record shows that several pages of similar instances were alleged by Plaintiff to which Defendant did not or could not dispute. (*Compare* D.R. Decl. ¶¶ 22–40 *with* Def.'s Opp'n 11:25–14:23.) Defendant's unsupported claim that Plaintiff's socializing caused her tardiness cannot explain the abovementioned exclusions. Furthermore, even if some services and activities have been relocated to the first floor, Plaintiff is still unable to access the school library, attend school functions, and make spur-of-the-moment decisions to go upstairs or downstairs. (D.R. Decl. ¶¶ 24, 43, 44.) Accordingly, the Court determines that Plaintiff has been and continues to be excluded from participation in Defendant's services, programs, and activities.

#### c. The Exclusion Was Based on Plaintiff's CMT.

The Department of Justice ("DOJ") promulgates regulations to implement the ADA, 28 C.F.R. §§ 35.149–.151, and the DOJ's interpretation of the regulations must be given controlling weight unless the interpretation is plainly erroneous or inconsistent with the regulations, *Alhambra Hosp. v. Thompson*, 259 F.3d 1071, 1074 (9th Cir.2001). The regulations require a public entity to "operate each service, program or activity so that the service, program, or activity, when viewed in its entirety, is readily *accessible to* and *usable by* individuals with disabilities." 28 C.F.R. § 35.150(a) (emphasis added). When access to pathways and classrooms are obstructed, a public entity violates the ADA. *See Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F.Supp.2d 1045, 1061–64 (C.D.Cal.2008) (holding that requiring disabled students to request accommodations each semester for "transportation to otherwise inaccessible parts of campus" is discriminatory and enjoining defendant from charging for an elevator key). The DOJ has interpreted the requirement for accessibility and usability to preclude public entities from having "[i]noperable elevators [and] locked accessible doors...." *Madden v. Del Taco, Inc.*, 150 Cal.App.4th 294, 58 Cal.Rptr.3d 313, 320 n. 5 (Ct.App. 2007) (quoting DOJ, appen. B, Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 28 C.F.R. pt. 36 (2006)). The DOJ clarified that it is insufficient to have features, like an elevator, if it cannot actually be used by disabled individuals. *Id.*

Plaintiff was excluded from class time, student club meetings, school functions, and academic services because of her CMT disability. (D.R. Decl. ¶¶ 19, 37, 38, 39, 41, 43.) Defendant had elevators, but Plaintiff could neither access nor use them by herself. (D.R. Decl. ¶¶ 19, 37, 38.) By locking the elevators, Defendant prevented Plaintiff from partaking in Defendant's services and programs. Accordingly, with deference to the DOJ's interpretation, the Court finds that Plaintiff was excluded on the basis of her disability.

### d. The Provision of an Elevator Key Is a Reasonable Accommodation.

After meeting the initial burden of producing evidence that Plaintiff is qualified under the ADA and Section 504, Plaintiff has to show the existence of a reasonable accommodation. *Zukle*, 166 F.3d at 1047. Such a showing shifts the burden to Defendant, who has to produce evidence that the accommodation requested would require a fundamental or substantial modification of its programs and standards. *Id.* "Because the issue of reasonableness depends on the individual circumstances of each case," a determination of whether an accommodation is reasonable "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir.1999). "[M]ere speculation that a suggested accommodation is not feasible falls short of the ... requirement." *Id.* (quotes omitted).

 Plaintiff has met her burden of showing the existence of a reasonable accommodation by suggesting that Defendant provide her with an elevator key so that she may independently use the elevator, attend class on time, and participate in all school functions and activities. This accommodation addresses the failings of the current accommodations; she will neither need to rely on a Mobility Liaison who is often late, absent or without an elevator key nor have to feel self-conscious and demeaned by a full-time aid. Though neither party has addressed costs, presumably, an elevator key is financially more prudent than a salary for a full-time liaison. Lastly, Defendant's argument that,

because Plaintiff is slow at handwriting, she is unable to turn an elevator key is unavailing. (*See* Def.'s Opp'n 11:10–14.) If Plaintiff can grip a pen, she can likely hold an elevator key.[9]

Defendant also objects to the request through the conclusory claim that the provision of an elevator key amounts to a substantial modification of programs or standards. (Def.'s Opp'n 10:19–25.) Defendant asserts that access to the elevator key will present "safety and security risks to [P]laintiff and others due to the inability to supervise the use and operation of the elevator...." (Def.'s Opp'n 11:2–3.) Defendant cites how it "had to cordon off some areas of its *campuses* which [could not] be adequately supervised ... [for] smoking, drug use, and sexual activity...." (Def.'s Opp'n 11:4–6.) No evidence is provided that Defendant had to take such action at Eastwood High School, Plaintiff's school. No evidence is provided that Defendant has been disciplined for smoking, drug use, and sexual activity. Mere speculation that possession of an elevator key will lead to "mischief" is insufficient to meet Defendant's burden. (*See* Def.'s Opp'n 10:25–11:9.)

Accordingly, the Court determines that Defendant fails to meet its burden of proving that the reasonable accommodation suggested by Plaintiff constitutes a fundamental or substantial modification of its programs and standards. The Court makes this determination carefully and with proper deference to Defendant's expertise in supervising and educating youths. *But cf. Zukle*, 166 F.3d at 1048 (implying that deference is only appropriate when modifications entail "academic decisions"); *see also Wong*, 192 F.3d at 818–19 (not entitled to deference if defen-

---

**9.** The Court finds this argument highly suspect. Were this a true concern, Defendant could simply have asked Plaintiff to use an elevator key and determined whether she is

capable of such use. This determination should have been a part of a fact-specific, individualized analysis, rather than a speculative argument in a court filing.

dant fails to provide record showing fact-specific, individualized analysis).

For the above reasons, Plaintiff shows that she is likely to succeed on the merits. Even assuming she does not, Plaintiff raises serious questions on the merits of her claims.

### 3. The Balance of Hardships Tips Sharply in Favor of Plaintiff.

■ The Court must balance an elevator key against a child's education and emotional development. The balance, not surprisingly, tips sharply in favor of Plaintiff. Having addressed Plaintiff's irreparable harm and Defendant's argument of substantial modification, the Court declines to restate its previous analysis. Defendant does not even mention any hardship it would suffer from the provision of an elevator key to Plaintiff, other than the mere speculation that it would lead to student mischief. (*See generally* Pl.'s Opp'n.) Accordingly, the Court finds that the irreparable harm to Plaintiff overwhelmingly tips the balance of hardships in favor of Plaintiff.

### 4. Public Interest Will Be Served by the Preliminary Injunction.

■ The Rehabilitation Act and ADA embody the public interest in "empower[ing] individuals with disabilities to maximize . . . independence, and inclusion and integration into society. . . ." 29 U.S.C. § 701(b). Congress passed these laws because:

> discrimination against individuals with disabilities persists in . . . education . . . [and they] continually encounter various forms of discrimination, including . . . the discriminatory effects of architectural [and] transportation . . . barriers, overprotective rules and policies, . . . and relegation to lesser services, programs, [and] activities."

42 U.S.C. § 12101(a)(3)-(5). By granting the preliminary injunction, the Court will be furthering these public interests. Plaintiff, despite her disability, will be able to independently use the elevators and access all facilities without relying on someone else's help. Her sense of self-worth and emotional development should not be stymied by overprotective rules and policies put in place because of speculative fears of student mischief. Plaintiff will have access to classroom time, school functions, and student club activities like any other non-disabled student. "That is what the law requires and the [IDEA] strives for: giving students access to the general curriculum and keeping them from being labeled special education." *Marshall Joint Sch. Dist.*, 616 F.3d at 640 (citing 20 U.S.C. § 1412(a)(5)).

Accordingly, the Court GRANTS Plaintiff's Motion for Preliminary Injunction. Because the law and facts clearly favor the Plaintiff, she has met her burden for a mandatory injunction. Indeed, if there were ever an instance where a mandatory injunction should be granted, the case at hand is such an instance. Plaintiff only seeks an elevator key to provide her the same rights and privileges to a public education as her non-disabled peers. Let Defendant be enjoined with haste; Plaintiff has suffered enough irreparable harm.

### III. *RULING*

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED** and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED**. Plaintiff's Evidentiary Objections are **SUSTAINED IN PART AND OVERRULED IN PART**. A scheduling conference is set for November 8, 2010.

IT IS SO ORDERED.