# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1164

_____

Eugene J. Nelson, as Parents and Next Friends of C.N. a Minor; Lisa J. Nelson, as Parents and Next Friends of C.N. a Minor,

*Plaintiffs - Appellants*,

v.

Charles City Community School District,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: February 15, 2018
Filed: August 15, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

Eugene and Lisa Nelson, as parents and next friends of their daughter C.N., sued the Charles City (Iowa) Community School District. They alleged that the

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

District violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), when it failed to make reasonable accommodations for C.N. while she was a student. The district court[1] granted summary judgment for the District, reasoning that the Nelsons failed to exhaust their administrative remedies as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. We affirm.

I.

The parties dispute some of the facts in this case; they also have conflicting views on whether factual findings of the Iowa Department of Education in a prior administrative proceeding should have preclusive effect in this action. For purposes of this appeal, we adopt the approach most favorable to the Nelsons. We assume without deciding that the Department's factual findings that favor the Nelsons preclude relitigation of the same facts here, and we consider other disputed facts in the light most favorable to the Nelsons.

C.N. attended a school in the Charles City Community School District for ninth grade during the 2013-2014 school year. When Lisa Nelson registered C.N., she reported under "Medical Conditions" that C.N. had polycystic ovarian syndrome ("PCOS") and depression. C.N. was absent frequently from school due to depression and complications from PCOS. On April 29, 2014, the District submitted a Truancy Referral Form regarding C.N. to the Floyd County Attorney. The Nelsons met with representatives from the District for a truancy mediation on May 22, 2014. The parties agreed that C.N. would obtain a mental health evaluation, and attend school through the end of the school year, summer school, and subsequent mediations.

---

[1]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa, now deceased.

After the May 2014 mediation, Mrs. Nelson began to inquire about online educational opportunities for C.N. At a truancy mediation in July 2014, school officials encouraged Mrs. Nelson and C.N. to apply to the Iowa Connections Academy, an online educational opportunity offered through the CAM Community School District based in Anita, Iowa. Mrs. Nelson elected not to proceed with that option, and applied instead to the Iowa Virtual Academy, an online educational program through Clayton Ridge Community School District in Guttenberg, Iowa.

Under Iowa law, through a process called open enrollment, parents may apply to enroll their child in a school district other than their own. *See* Iowa Code § 282.18. On July 26, 2014, Mrs. Nelson filed an open enrollment application with the Clayton Ridge District for the 2014-2015 school year, seeking permission to enroll C.N. outside the Charles City District. The application deadline was March 1, 2014, but Mrs. Nelson asserted that she had "good cause" for applying late. She represented that C.N. "was bullied, but more importantly has health issues that interfere with attendance, PCOS & depression."

The superintendent of Clayton Ridge District recommended denying the application as untimely. He expressed willingness to reconsider, if the Charles City District recommended approval, but the Charles City superintendent also recommended denial. He noted that the application was untimely, and that the Charles City District had its own online classes in which C.N. could enroll.

The Nelsons took the matter to the Charles City Board of Education, but the Board voted in early September 2014 to deny the open enrollment application. The Nelsons then appealed to the Iowa State Board of Education under Iowa Code § 290.1. The State Board ruled in favor of the Nelsons in February 2015 in the open enrollment proceedings:

[Mrs. Nelson's] application for open enrollment was the direct result of the [Charles City District] facilitating her open enrollment application because they could not meet the needs of C.N. [Mrs. Nelson] did exactly what administration told her to do. She has a right to expect that the district would recommend that the board approve her request, especially when [Mrs. Nelson] and C.N. are involved in a criminal truancy prosecution initiated by Charles City.

After the State Board approved the open enrollment application, Mrs. Nelson sought to enroll C.N. in the online program through the Clayton Ridge District. But the program's representatives told Mrs. Nelson that because the school year was already underway, C.N. would have to wait until the following school year to enroll.

C.N. was not enrolled in school while her open enrollment application was pending, and the Nelsons were concerned that waiting until 2015-2016 would interfere with her education. So they decided instead to enroll C.N. at a nearby community college to take certified nursing assistant classes. C.N. never returned to high school, but obtained her nursing assistant certification and has pursued a General Equivalency Diploma.

Although the Nelsons pursued an appeal with the Iowa State Board on the discrete issue of C.N.'s open enrollment application, they never invoked the separate set of administrative procedures that were available to them under the IDEA, 20 U.S.C. § 1400 *et seq*. The IDEA sets forth a number of procedural safeguards to ensure that children with disabilities receive a free appropriate public education. *Id.* § 1415. Under that comprehensive statutory framework, parents of a disabled child may work with a team of qualified professionals to develop an Individualized Education Program ("IEP") to ensure that their child receives special education and related services that will enable her to meet educational goals. *Id.* § 1414(d). The Nelsons did not avail themselves of these IDEA procedures.

On August 11, 2015, six months after the Iowa State Board issued its decision on the open enrollment issue, the Nelsons filed this action under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The district court granted summary judgment for Charles City District on the ground that the Nelsons had not exhausted their administrative remedies under the IDEA, 20 U.S.C. § 1400 *et seq*. The court reasoned that although the Nelsons had brought their claim under the Rehabilitation Act, "Congress has explicitly required that the administrative remedies provided by the IDEA must be exhausted before a Rehabilitation Act suit like this one may be filed." *See id.* § 1415(*l*). We review *de novo* whether the Nelsons were required to exhaust their administrative remedies under the IDEA. *McCauley ex rel. J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 947 (8th Cir. 2017).

II.

A.

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The Rehabilitation Act itself does not require a plaintiff to exhaust administrative remedies before bringing an action in the district court, but the parties dispute whether the IDEA imposes an exhaustion requirement on the Nelsons' claim.

To receive federal funding under the IDEA, States must implement a number of procedures "to ensure individuals with disabilities will have the opportunity to obtain a free appropriate public education." *Bailey ex rel. J.B. v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013); *see* 20 U.S.C. § 1412. One feature is that

-5-

a party may file a complaint relating to the "identification, evaluation, or educational placement" of a child with a disability, or the provision of a free appropriate public education ("FAPE") to such a child. 20 U.S.C. § 1415(b)(6)(A). A complainant "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency," depending on state law. *Id.* § 1415(f)(1)(A). An aggrieved party who has exhausted the IDEA's administrative procedures may bring an action in the federal district court. *Id.* § 1415(g), (i)(2)(A). Iowa has implemented administrative procedures to comply with the requirements of the IDEA. *See* Iowa Admin. Code r. 281-41.1 *et seq*.

A key point for our purposes is that the IDEA exhaustion requirement is not limited to claims formally brought under the IDEA. It also applies where a plaintiff brings a claim under the Constitution, the Americans with Disabilities Act, the Rehabilitation Act, and other federal laws protecting children with disabilities if such a claim "seek[s] relief that is also available under" the IDEA. *Id.* § 1415(*l*). A suit seeks relief that is also available under the IDEA if it "seek[s] relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017). Thus, if the Nelsons sought relief for the denial of a FAPE for C.N., they were required to exhaust the IDEA's administrative procedures before bringing their Rehabilitation Act claim.

In *Fry*, the Supreme Court addressed how to determine whether a lawsuit concerns the denial of a FAPE. The Court clarified that one need not exhaust the IDEA's administrative procedures whenever a suit "has some articulable connection to the education of a child with a disability." *Id.* at 753. Rather the IDEA's exhaustion requirement applies, regardless of labels or terms used, only where the "substance, or gravamen, of the plaintiff's complaint" is the denial of a FAPE. *Id.* at 752.

-6-

The Nelsons pleaded that the Charles City District "failed to make reasonable accommodations to enable C.N. to receive education free from discrimination based upon her disabilities." Evaluating the claim as a whole, we think the Nelsons in substance advance a challenge to the denial of a free appropriate public education.

The complaint objects to the Charles City District's handling of C.N.'s open enrollment application. The Nelsons detail how the school administrators encouraged the Nelson family to apply to online education programs outside of the Charles City District, and how the Nelson family relied on this encouragement. They note that the assistant principal helped Mrs. Nelson fax her open enrollment application to the Clayton Ridge District. They detail how the Charles City District ultimately denied C.N.'s application despite "tacitly admitt[ing] that its on-line educational programming could not meet C.N.'s needs." Finally, they allege that C.N. was not in school while her open enrollment application was pending before the Iowa State Board of Education, and that C.N. "miss[ed] out on important educational opportunities that cannot now be recovered." In essence, the Nelsons claim that C.N. was denied a FAPE due to the mishandling of her open enrollment application by the Charles City District when its own educational programming could not meet her needs.

In *Fry*, the court posed two hypothetical questions, the answers to which may serve as a "clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination":

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? . . . [W]hen the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for

the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756.

In C.N.'s case, the answer to both of these questions is "no." C.N. could not have sued a public theater or library for the mishandling of an application to open-enroll in online educational programming in a neighboring school district. Nor could an adult employee of a Charles City school have brought essentially the same claim. The Nelsons urge us to approach these hypothetical questions at a higher level of generality, arguing that C.N. could sue a public theater or library for the "broken promise of non-discriminatory access" to their services, and that an adult employee could bring the same claim against a school. But *Fry* did not contemplate such a high level of generality, *see id.* at 756-57, and the Nelsons' approach—by positing that the claim is for a "broken promise of non-discriminatory access"—would assume the answer to the very question at issue.

The Nelsons insist that they are not seeking relief for the denial of a FAPE, and emphasize that they have never invoked the IDEA's formal procedures in the past. To be sure, if the Nelsons *had* invoked formal IDEA procedures, that would be "strong evidence" that their suit *was* for the denial of a FAPE, *id.* at 757, but the converse is not true. Whether exhaustion was required still depends on the gravamen of the Nelsons' complaint.

The Nelsons also argue that the gravamen of their complaint cannot be the denial of a FAPE because the Iowa State Board of Education already awarded them the only educational remedy they sought—the right to enroll C.N. in online classes outside of the Charles City District. But a parent's "voluntary decision to remove [a

child] from school, and thus seek only compensatory and punitive damages rather than compensatory education services, does not exempt her from the exhaustion requirement" or alter the gravamen of the complaint. *McCauley*, 850 F.3d at 950. Because the Nelsons' complaint seeks relief available under the IDEA—relief for the denial of a FAPE—they must exhaust their administrative remedies unless an exception to the exhaustion requirement applies.

## B.

There are three exceptions to the exhaustion requirement in the IDEA context: "(1) futility, (2) 'inability of the administrative remedies to provide adequate relief,' and (3) 'the establishment of an agency policy or practice of general applicability that is contrary to law.'" *Id.* (quoting *Bailey*, 721 F.3d at 594). If one of these exceptions applies, then a plaintiff is relieved of the obligation to exhaust her administrative remedies under the IDEA.

The Nelsons first contend that exhaustion of administrative remedies would have been futile. They argue that because the Charles City District never identified C.N. as a child in need of special education services, the IDEA's administrative procedures were not available to them. The IDEA does require States to identify, locate, and evaluate "[a]ll children with disabilities residing in the State . . . who are in need of special education and related services." 20 U.S.C. § 1412(a)(3)(A). The statute also, however, gave the Nelsons the right to file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a child with a disability], or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6)(A); *see* Iowa Admin. Code r. 281-41.507(1). Given the Nelsons' position that C.N. was a child with a disability who needed educational

accommodations, nothing prevented the Nelsons from filing a complaint and invoking the full panoply of procedural safeguards available under the IDEA.[2]

The administrative procedures available to the Nelsons under the IDEA were separate and distinct from those that they did invoke after the Charles City District denied C.N.'s open enrollment application. The Nelsons pursued a narrow administrative remedy under Iowa Code § 290.1, which allows an aggrieved student to appeal a decision by the local school board to deny an untimely open enrollment application in certain circumstances. *See* Iowa Code § 282.18.5. Under the IDEA, however, the Nelsons could have filed a due process complaint challenging the State's failure to identify C.N. as a child with a disability and to provide her with a FAPE. *See* Iowa Admin. Code r. 281-41.507(1). If C.N. were found to need special education and related services, the State would have had 30 days to hold a meeting to develop an IEP for C.N. *Id.* r. 281-41.323(3)(a). A team assigned to create an IEP could have considered and implemented a number of special education and related services—including, but not limited to, enrollment in a particular online program—that would have enabled C.N. to receive a FAPE. *Id.* r. 281-41.320(1). The Nelsons could have invoked the IDEA's procedures as soon as they learned that the Charles City District had denied C.N.'s open enrollment application, or whenever C.N.'s depression and PCOS first began to impact her education.

---

[2]The Nelsons present this point as an argument for "futility" of administrative remedies but it may be better understood as a claim about "inadequate relief," because they claim that the agency lacked legal authority to grant relief to a student in C.N.'s position. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) ("[A]n administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'") (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)).

Second, the Nelsons emphasize that they are seeking money damages, which are not available under the IDEA, and argue that their administrative remedies are thus inadequate. This point is not persuasive. "[T]he IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought." *McCauley*, 850 F.3d at 950 (quoting *Bailey*, 721 F.3d at 595). As others have explained, if the Nelsons' position were to prevail, then "future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant." *D.G. ex rel. N.B. v. Alachua Cty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (per curiam). The IDEA's administrative procedures, moreover, could have afforded the Nelsons at least some of the relief that they requested. The statute permits the recovery of attorney's fees and costs, 20 U.S.C. § 1415(i)(3)(B), and compensatory education or reimbursement for educational services that a school district should have provided. *Bailey*, 721 F.3d at 593-94.

The Nelsons counter that money damages are not simply their preferred form of relief, but the *only* form of relief that could redress C.N.'s injuries. They note that C.N. already received her educational remedy when the Iowa State Board ruled in her favor, so she now could benefit only from damages for her diminished earning capacity and the emotional distress that she allegedly suffered as a result of the Charles City District's past conduct. In determining whether a plaintiff was required to exhaust remedies, however, we must consider the student's status at the time of the challenged conduct when the parents could have invoked administrative procedures. A contrary approach, allowing a plaintiff to forego administrative remedies and then sue later for damages after finishing school, "would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir. 2002).

The Nelsons did not pursue relief under the IDEA during the summer of 2014 or the 2014-2015 school year when they were dissatisfied with the education offered by the Charles City District. Because they did not invoke the administrative process, we can only speculate about educational opportunities that might have been available to provide C.N. with a free appropriate public education. Under the statute, however, it is the responsibility of parents to bring their grievance in that manner if they wish to bring a lawsuit alleging the denial of a FAPE. Frustrating though it may seem to parents struggling to manage a difficult educational situation for a child with special needs, the law does not allow them to forego the administrative process and seek later to recover damages to compensate for their own self-help remedies.

\*   \*   \*

The judgment of the district court is affirmed.

_____