**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEXYINGTON MCINTYRE,
            *Plaintiff-Appellant*,

v.

EUGENE SCHOOL DISTRICT 4J,
            *Defendant-Appellee*,

and

CHERYL LINDER; ANDY DEY;
MICHAEL STASACK; SUSIE
NICHOLSON; SUZIE MCLAUCHLIN,
            *Defendants.*

No. 19-35186

D.C. No.
6:18-cv-00768-
MK

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted March 4, 2020
Portland, Oregon

Filed September 23, 2020

Before:  Ferdinand F. Fernandez and Richard A. Paez,
Circuit Judges, and Timothy M. Burgess,[*] District Judge.

Opinion by Judge Paez

---

**SUMMARY**[**]

---

### Disability Discrimination

The panel reversed in part and vacated in part the district court's dismissal of a former high school student's action alleging disability discrimination by school officials in violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

The plaintiff had a "504 Plan" describing the education and related aids and services she needed, but she did not have an "individualized education program," defined under the Individuals with Disabilities Education Act ("IDEA") as a plan for ensuring that a student receives a free appropriate public education ("FAPE"). The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) on the dual grounds that (1) the plaintiff failed to exhaust her administrative remedies under the IDEA, and (2) her claims were barred by the applicable two-year statute of limitations.

---

[*] The Honorable Timothy M. Burgess, United States Chief District Judge for the District of Alaska, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Applying *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017), the panel concluded that the "crux" of the complaint sought relief for the disability-based discrimination and harassment the plaintiff faced at school, and not for the denial of a FAPE under the IDEA. As a result, she was not required to exhaust administrative remedies under the IDEA. First, the plaintiff complained that the school district discriminated against her by failing to provide her with specific accommodations, none of which constituted FAPE as the IDEA defines it. The plaintiff also complained that the school district discriminated against her by creating a hostile learning environment. Her claim, which was based only on Section 504, did not indirectly seek relief under the IDEA. Because she never sought or received "special education and related services," a hostile learning environment could not be said to have interfered with any such services. Accordingly, the panel reversed the district court's dismissal for failure to exhaust administrative remedies under the IDEA.

The panel also vacated the district court's dismissal on the alternative ground that the plaintiff's claims were barred by the two-year statute of limitations because she was not entitled to minority tolling under Oregon Revised Statutes section 12.160(2) or equitable tolling. The panel concluded that to the extent the district court construed the statute of limitations to be an alternative basis for dismissal, it misconstrued a magistrate judge's findings and recommendation, which it adopted in full. Because the tolling issues were not an independent basis for dismissal, the panel vacated the district court's order. In light of the panel's analysis under *Fry*, it remanded for further consideration of whether the plaintiff's claims were subject to minority tolling.

**COUNSEL**

Kimberly Sherman (argued), Education, Environmental, & Estate Law Group LLC, Eugene, Oregon; Marianne Dugan, Eugene, Oregon; for Plaintiff-Appellant.

Rebekah R. Jacobson (argued) and Shayna M. Rogers, Garrett Hemman Robertson P.C., Salem, Oregon, for Defendant-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Lexyington McIntyre ("McIntyre") appeals the district court's order dismissing her complaint against Defendant Eugene School District 4J ("the District").[1] The operative complaint alleges that, while McIntyre was a student at South Eugene High School, school officials discriminated against her on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) on the dual grounds that (1) McIntyre failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act, and (2) McIntyre's claims were barred by the applicable two-year statute of limitations. Because the district court erred in both respects, we reverse

---

[1] We adopt the spelling of the plaintiff's first name used in the operative First Amended Complaint.

in part and vacate in part and remand for further proceedings.[2]

# I. BACKGROUND[3]

## A. *Factual Background*

In 2017, McIntyre graduated from South Eugene High School, one of the District's schools, in Eugene, Oregon. From first grade until her high school graduation, McIntyre participated in the District's Language Immersion Program.

In early 2012, during the seventh grade, McIntyre was diagnosed with Attention Deficit Disorder ("ADD"). The District accordingly developed a "504 Plan" for McIntyre, which is a written document describing the regular or special education and related aids and services a student needs. The 504 Plan laid out limited accommodations for McIntyre, including extra time on tests and assignments, reduced

---

[2] We have jurisdiction under 28 U.S.C. § 1291. *See Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1100 (9th Cir. 2019). The Individuals with Disabilities Education Act's exhaustion requirement is not jurisdictional, but rather a claims processing provision that defendants may offer as an affirmative defense. *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

[3] When reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "[w]e accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005).

assignments and projects, preferred seating, and a quiet and separate testing environment.[4]

In fall 2013, McIntyre started as a freshman in the International High School program at South Eugene High School. Like every other student in the French Immersion Program, McIntyre was enrolled in a French Language Program with teacher Michael Stasack. But Stasack declined to implement McIntyre's 504 Plan accommodations and repeatedly suggested that she did not belong in the Program due to her ADD. At the end of the school year in May 2014, McIntyre's parents filed with the District a formal "Bullying/Harassment" complaint against Stasack. The District investigated and found two violations of the District's discrimination and harassment policies. McIntyre suffered Post-Traumatic Stress Syndrome as a consequence of the discrimination and harassment she faced that year. As a remedy for the violations, the District offered McIntyre two options: she could attend college-level French classes through the University of Oregon or complete an "Independent Study" program through the District. McIntyre did not immediately select an option for her sophomore year; instead, she completed a yearlong study abroad program in Germany in 2014–15. She returned to her high school in fall 2015.

McIntyre's junior year was especially challenging. At the beginning of the eleventh grade in fall 2015, McIntyre was diagnosed with Addison's disease, a rare hormone

---

[4] As explained further below, schools regularly develop 504 plans to support students who require accommodations for their disabilities. Most students who are also eligible for an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Act, however, receive an IEP in lieu of a 504 plan. McIntyre never had an IEP.

condition.[5]  The District accordingly amended McIntyre's 504 Plan to include an emergency protocol that required school officials to call 911 if she were seriously injured.  In addition, because of the disease, McIntyre could no longer take her ADD medication.

As to McIntyre's language study, after the District discouraged her from taking college courses, McIntyre accepted the District's offer of an independent study program for the 2015–16 school year.  The instructor was Suzie McLauchlin, a non-language teacher who was not certified to administer the International Baccalaureate ("IB") exams and was not accredited to teach Advanced Placement ("AP") courses.  McLauchlin rarely met with McIntyre.  As the school year progressed, McIntyre lacked sufficient opportunity to practice French, and she was unprepared for the AP exam in spring 2016.

Among her other teachers, McIntyre's math teacher, Susie Nicholson, also repeatedly declined to implement the 504 Plan accommodations.   In particular, Nicholson declined to provide McIntyre with testing accommodations, forcing McIntyre to take exams in a way that was embarrassing or left her with less time on the exams than her peers.  Nicholson's actions further contributed to McIntyre's stress and anxiety and exacerbated her Addison's disease.

---

[5] Addison's disease is "a chronic type of adrenocortical insufficiency, characterized by hypotension, weight loss, anorexia, weakness, and a bronzelike hyperpigmentation of the skin.  It is due to tuberculosis- or autoimmune-induced destruction of the adrenal cortex, which results in deficiency of aldosterone and cortisol and is fatal in the absence of replacement therapy."  *Addison disease*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (32d ed. 2012).

Towards the end of her junior year in spring 2016, the District reassigned Stasack to a different school after it investigated another student's complaint against him. McIntyre's peers in the French Immersion Program organized a walk-out to protest Stasack's reassignment. They also protested the accommodations that students with disabilities sought, believing that Stasack was "fired because of the 504 kids." With McLauchlin's permission, students walked out from McLauchlin's social studies class on May 26, 2016. McIntyre felt isolated from her peers and betrayed by McLauchlin and the school administrators who failed to intervene. Throughout the following year, McIntyre's classmates maintained their resentment, harassing and bullying McIntyre for her perceived role in Stasack's transfer. They ultimately designed a sweatshirt celebrating him, which students wore at their graduation ceremony in 2017. School officials never addressed the hostile learning environment McIntyre experienced.

In June 2016, McIntyre fractured her ankle during a physical education class. Despite the 504 Plan's emergency protocol requiring school officials to call 911, school officials declined to call for an ambulance.

During her 2016–17 senior year, the District made it difficult for McIntyre to apply for college in light of her disability. The District failed to submit documentation for McIntyre to receive testing accommodations with the College Board, declined to properly record academic credit for independent study and physical education classes from her junior year, and refused to help McIntyre obtain the necessary evaluations and approvals for IB and College Board testing accommodations.

## B. District Court Proceedings

McIntyre, after turning eighteen, filed this lawsuit on May 3, 2018. The First Amended Complaint, the operative complaint, raised two claims. McIntyre alleged one claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–34, alleging that the District failed to provide reasonable accommodations to McIntyre. McIntyre also alleged a claim under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, alleging that the District discriminated against her by failing to provide her with reasonable accommodations and creating a hostile learning environment. The complaint sought declaratory and injunctive relief, economic and non-economic money damages, and reasonable attorneys' fees and costs.

In response to the District's motion to dismiss, a magistrate judge recommended granting the motion for failure to state a claim. The magistrate judge concluded that McIntyre's claims, although raised under the ADA and Section 504, could not proceed because she had failed to administratively exhaust them as provided by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1491.[6] Although McIntyre never sought and was

---

[6] Although the District raised its exhaustion defense under Rule 12(b)(6), we have said that such a defense should generally be raised on summary judgment. A defendant may raise the defense under Rule 12(b)(6) "[i]n the rare event that a failure to exhaust is clear on the face of the complaint." *Albino*, 747 F.3d at 1166. McIntyre's failure to exhaust her claims under the IDEA does not appear on the face of her operative complaint. McIntyre, however, does not challenge the District's assertion that she failed to exhaust her claims under the IDEA's administrative process or the procedural mechanism by which the district court dismissed the complaint. Accordingly, we proceed to review de

never recommended for an individualized education program ("IEP"), the magistrate judge, relying on *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017), nonetheless concluded that the gravamen of McIntyre's claims involved the provision of a free appropriate public education ("FAPE") and therefore exhaustion was required. The magistrate judge also determined that minority tolling did not apply to McIntyre's claims, explaining that Oregon's minority tolling statute is inconsistent with the IDEA. The magistrate judge also determined that equitable tolling did not apply given that McIntyre's parents were aware of her alleged injuries.

McIntyre timely filed objections to the magistrate judge's Findings and Recommendation ("F&R"). The district court adopted the F&R in full. *McIntyre v. Eugene Sch. Dist. 4J*, No. 6:18-CV-00768-MK, 2019 WL 294758, at *1 (D. Or. Jan. 23, 2019). The district court dismissed the First Amended Complaint without prejudice but granted McIntyre fourteen days to file a motion for leave to amend. *Id.* at *4. McIntyre filed a notice declining to amend her complaint. In response, the court entered judgment dismissing the case.

McIntyre timely appealed.

## II.  THE GOVERNING FEDERAL STATUTES

There are three major overlapping pieces of federal legislation generally applicable to a child's claims of disability discrimination in school: the IDEA, Section 504 of the Rehabilitation Act, and Title II of the ADA. *See A.G. v.*

---

novo whether McIntyre was required to exhaust. *See Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).

*Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016). Because this appeal turns on their interplay, we provide an overview here.

A. *The IDEA*

"Congress enacted the IDEA 'to ensure that all children with disabilities have available to them a free appropriate public education [or "FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *Id.* (citation omitted) (alteration in original). In exchange for federal funds, states agree to comply with a number of statutory conditions, including the requirement to provide a FAPE to all eligible children. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017).

The IDEA's FAPE requirement includes both "special education" and "related services." *Id.* at 994 (quoting 20 U.S.C. § 1401(9)). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability." *Id.* (quoting 20 U.S.C. § 1401(29)). "Related services" are the support services "required to assist a child . . . to benefit from" that instruction. *Id.* (quoting 20 U.S.C. § 1401(26)). States also have a "child-find" obligation under the IDEA to identify, locate, and evaluate all children who may require special education and related services. 20 U.S.C. §§ 1412(a)(3), (7), 1414(a)–(c); *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1110 (9th Cir. 2016).

The IDEA ensures that students receive a FAPE through the development of an individualized education program, "the centerpiece of the statute's education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311

(1988). An IEP is a comprehensive plan collaboratively prepared by a child's "IEP Team" (which includes teachers, school officials, and the child's parents), and must be drafted in compliance with a detailed set of procedures. *Endrew F.*, 137 S. Ct. at 994. Among other requirements, the IEP must describe the "special education and related services . . . that will be provided" so that the child may "advance appropriately toward attaining the annual goals" and, when possible, "be involved in and make progress in the general education curriculum." 20 U.S.C. § 1414(d)(1)(A)(i)(IV). FAPE is a substantive requirement—an IEP must ultimately be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999.

When a disagreement arises about a child's eligibility for an IEP or an IEP's contents, the IDEA requires states to provide a dispute resolution process. *See* 20 U.S.C. § 1415(e). The major features of the process are outlined in the statute. *Id.* The process usually starts with a parent or school official presenting a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). The parties may resolve their differences through a preliminary meeting or a mediation, after which they may proceed to a "due process hearing" before the state or local school district. 20 U.S.C. § 1415(e), (f), (i); *Endrew F.*, 137 S. Ct. at 994. If the due process hearing does not resolve the matter, the IDEA creates a cause of action for children and parents to seek relief in any competent court. 20 U.S.C. § 1415(i). They can pursue injunctive or other prospective relief, including reimbursement for the cost of private education, but not ordinarily monetary damages. *See M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 856 (9th Cir.

2014); *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008); 20 U.S.C. § 1412(a)(10)(C)(ii); 34 C.F.R. § 300.148(c).

## B.  Section 504 and the ADA

While the IDEA focuses on the provision of appropriate public education to children with disabilities, the Rehabilitation Act more broadly addresses the provision of state services to individuals with disabilities.  *Lemahieu*, 513 F.3d at 929.  Section 504, the Act's core provision, provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).  Section 504 applies to public schools that receive federal financial assistance.  29 U.S.C. § 794(b)(2)(B).  The protective measures in Section 504 are not expressly affirmative in nature, but the Rehabilitation Act empowers federal agencies to promulgate regulations aimed at preventing prohibited discrimination.  *A.G.*, 815 F.3d at 1203.

Section 504's implementing regulations require qualifying public schools to "provide a free appropriate public education to each qualified handicapped person." 34 C.F.R. § 104.33(a).  The FAPE requirements in the IDEA and in Section 504 are "overlapping but different." *Lemahieu*, 513 F.3d at 925; *see also A.G.*, 815 F.3d at 1204 ("[A] showing that FAPE was denied under the IDEA does

not necessarily establish a denial of FAPE under Section 504."). Under Section 504 regulations, FAPE requires "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of [34 C.F.R.] §§ 104.34, 104.35, and 104.36." *A.G.*, 815 F.3d at 1203 (quoting 34 C.F.R. § 104.33(b)(1)) (emphasis omitted). Thus, Section 504's regulations gauge the adequacy of services provided to individuals with disabilities by comparing them to the level of services provided to individuals who are not disabled. *Id.* And unlike the IDEA's FAPE requirement, which is inexorably linked to "special education," a FAPE under Section 504 requires "regular *or* special education" that meet certain standards. 34 C.F.R. § 104.33(b)(1) (emphasis added).

There are two primary mechanisms for ensuring Section 504's FAPE requirement. The first, although not mentioned in Section 504 or its implementing regulations, is to develop a "504 plan," a written document describing the regular or special education and related aids and services a child needs and the appropriate setting in which to receive them. *See* U.S. Dep't of Educ., *Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools* (Dec. 2016), at 10, https://www2.ed.gov/about/offices/list/ocr/docs/504-resource-guide-201612.pdf; *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1186 n.1 (11th Cir. 2018) (explaining that schools "must evaluate students with disabilities to formulate § 504 Plans designed to aid the student's access to the general curriculum"); Or. Rev. Stat. § 343.154 (defining a "504 Plan" to mean "an education plan developed for a student in accordance with" Section 504).

The second, which is expressly permitted under the regulations, is to implement an IEP for students also eligible for services under the IDEA. *See A.G.*, 815 F.3d at 1204 (citing 34 C.F.R. § 104.33(b)(2)); *Lemahieu*, 513 F.3d at 933 ("[A]dopting a valid IDEA IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements."). In other words, a child eligible for accommodations under Section 504 may be served only by an IEP. In contrast, a child eligible under the IDEA must have an IEP and may not be served only by a 504 plan. *See* U.S. Dep't of Educ., Office of Civil Rights, *Protecting Students with Disabilities: Frequently Asked Questions About Section 504 and the Education of Children with Disabilities* (Sep. 25, 2018), https://www2.ed.gov/about/offices/list/ocr/504faq.html. Nationwide, about 7 million students, or 14% of all public school students, have an IEP. *See* National Center for Education Statistics, *Children and Youth with Disabilities* (last updated May 2019), https://nces.ed.gov/programs/coe/indicator_cgg.asp. A much smaller proportion, less than 2% of all students, have a 504 plan. *See* Education Week, "*States Vary in Proportion of Students with Disability-Related '504' Plans*" (Sept. 11, 2015), http://blogs.edweek.org/edweek/speced/2015/09/states_504_enrollment.html.

Title II of the ADA was modeled after Section 504. *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). It similarly provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Although several material differences exist between them, *see K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013), to bring a suit under the ADA and Section 504 requires the same elements: (1) the child is a qualified individual with a disability; (2) she was denied a reasonable accommodation that she needs to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance.  *A.G.*, 815 F.3d at 1204; *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).  A public entity can be liable for damages under Section 504 or the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."  *See A.G.*, 815 F.3d at 1204–08 (discussing separately plaintiffs' theories regarding meaningful access, reasonable accommodation, and deliberate indifference).

## C.  Exhaustion under the IDEA

The Supreme Court first considered the interaction of the IDEA and other antidiscrimination laws like Section 504 and the ADA in *Smith v. Robinson*, holding that the IDEA was the "exclusive avenue" through which a child with a disability could challenge the adequacy of her education.  468 U.S. 992 (1984).[7]  Congress quickly responded, amending the law in 1986 by adding the following provision:

---

[7] At the time, and until 1990, the IDEA was called the Education for the Handicapped Act.  To avoid an extra acronym, we refer only to the IDEA.

### (*l*) Rule of construction

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (emphasis added). The first half of § 1415(*l*) (i.e., everything before "except that") reaffirms the viability of laws like Section 504 and the ADA as independent statutory bases for ensuring the rights of students with disabilities. *See Fry*, 137 S. Ct. at 750. But the second half requires exhaustion of such claims to the extent that they "seek[] relief that is also available under" the IDEA. *Id.* The Supreme Court considered this exhaustion requirement in *Fry* "to address confusion in the courts of appeals as to the scope of § 1415(*l*)'s exhaustion requirement." *Id.* at 752.

In *Fry*, the Supreme Court rejected the Sixth Circuit's interpretation of § 1415(*l*) that exhaustion is required for any claim that "merely has some articulable connection to the education of a child with a disability." *Id.* at 753. Instead, § 1415(*l*) requires a focus on "relief that is also available" under the IDEA. *Id.* (quoting § 1415(*l*)). But the "only relief that an IDEA officer can give—hence the thing a plaintiff

must seek in order to trigger § 1415(*l* )'s exhaustion rule—is relief for the denial of a FAPE." *Id.* "[A]ny decision by a hearing officer on a request for substantive relief [under the IDEA] 'shall' be 'based on a determination of whether the child received a free appropriate public education.'" *Id.* at 754 (quoting 20 U.S.C. § 1415(f)(3)(E)(i))). As a result, "§ 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education." *Id.*

The Court expressly considered FAPE as the IDEA defines that term. *Id.* at 748 ("We hold that exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—*what the Act calls* a "free appropriate public education." (emphasis added) (citing 20 U.S.C. § 1412(a)(1)(A))). Although the Court acknowledged "a plaintiff might seek relief for the denial of a FAPE under Title II and § 504 as well as the IDEA," *id.* at 756, it did not discuss the "overlapping but different" requirements of FAPE under Section 504 regulations, *Lemahieu*, 513 F.3d at 925. Thus, to require exhaustion, a lawsuit must seek relief for the denial of FAPE as defined by the IDEA.

The Court provided some guidance for determining whether a plaintiff actually seeks relief for the denial of a FAPE under the IDEA: "What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." 137 S. Ct. at 755. The inquiry turns on the relief a plaintiff actually "seeks," as the statute requires, but not relief that a plaintiff "could have sought." *Id.* On the other hand, the inquiry does not turn on whether a complaint includes (or omits) any magic phrase, such as FAPE or IEP. *Id.* In addition, "a court should attend to the diverse means and ends of the statutes

covering persons with disabilities," principally noting that the IDEA's goal is to "provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs' . . . . while Title II and § 504 promise non-discriminatory access to public institutions." *Id.* at 755–56.

The Court also offered several "clues" to help determine the gravamen of a complaint. The Court suggested that lower courts ask two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?" *Id.* at 756 (emphasis in original). When the answer to both questions is yes, the complaint does not likely allege the denial of a FAPE; when the answer is no, then it likely does. *Id.* In addition, a court should look to the "history of the proceedings." *Id.* at 757. "A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." *Id.*

The Ninth Circuit has considered *Fry*'s application in a published opinion only once. *See Paul G.*, 933 F.3d 1096 (holding that parents of a child with autism and served with an IEP must exhaust their Section 504 and ADA claims that concern whether the child was provided a FAPE). Unlike the plaintiffs in that case, McIntyre should not have to exhaust her claims, as discussed next.

### III. ANALYSIS

For the following reasons, we conclude that the "crux" of McIntyre's complaint seeks relief for the disability-based discrimination and harassment she faced at school, and not for the denial of a FAPE under the IDEA. As a result, McIntyre need not exhaust the administrative remedies under the IDEA.

McIntyre first complains that the District discriminated against her by failing to provide her with specific accommodations, none of which constitute FAPE as the IDEA defines it. McIntyre's complaint alleges that the District failed to: (1) provide an alternative, quiet location to take exams, (2) provide extra time to complete exams, and (3) comply with an emergency health protocol. These accommodations cannot be construed as "special education," because they do not provide "specially designed *instruction*." 20 U.S.C. § 1401(29) (emphasis added). *See* 34 C.F.R. § 300.39(b)(3) ("Specially designed instruction means adapting . . . the content, methodology, or delivery of instruction . . . ."); *Fry*, 137 S. Ct. at 755 ("[T]he [IDEA's] goal is to provide each child with meaningful access to education by offering individualized instruction . . . ."); "Instruction," Cambridge Dictionary, https://dictionary. cambridge.org/us/dictionary/english/instruction ("[T]he act of teaching someone how to do something."); *see also* Robert A. Garda, Jr., *Untangling Eligibility Requirements Under the Individuals with Disabilities Education Act*, 69 Mo. L. Rev. 441, 486–87 (2004) ("[N]ot all services provided by schools to disabled students are special education. A child with Attention Deficit Disorder ("ADD") may need preferential seating and the use of a word processor, but not special education." (citations omitted)); *cf. L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*,

850 F.3d 996, 1004–06 (9th Cir. 2017) (holding that "one-on-one direction," "specially designed mental health services," and a behavior specialist's "extensive clinical interventions" constitute "special" rather than "general" education).[8]  And because McIntyre did not otherwise seek or receive special education—or, for that matter, an IEP—nor can these accommodations be construed as "related services," which are services a child needs "to benefit from" special education.  20 U.S.C. § 1401(26).[9]  Thus, because McIntyre seeks relief for the District's failure to provide specific accommodations that are neither "special education" nor a "related service"—the constituent parts of the IDEA's FAPE requirement—she does not seek relief for the denial of FAPE.

The District mischaracterizes the complaint when it argues that McIntyre sought "one-on-one special education." McIntyre's formal "Bullying/Harassment" complaint challenged Stasack's discrimination and harassment and his refusal to implement her 504 Plan's accommodations.  After finding repeated violations of District policy, the District—rather than requiring Stasack comply with District policy—offered McIntyre alternatives to complete her coursework.

---

[8] McIntyre's case is thus distinguishable from the only other published case on which either the magistrate judge or district court relied.  *Cf. Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 592 (8th Cir. 2018) (requiring exhaustion where a child sought an online education instructional program).

[9] We do not suggest that a student's IEP cannot provide testing accommodations or an emergency protocol as a "related service" to ensure she "benefits from" special education.  The point here is only that—absent special education—these accommodations alone do not meet the statute's definition of a "related service" to warrant exhaustion. 20 U.S.C. § 1401(26).

Nowhere does the complaint allege that McIntyre requested those options.   In any event, the inadequacy of the "independent study" option goes to the crux of McIntyre's claims, which is that she was harmed by the District's alleged discrimination rather than its failure to provide her special education.

McIntyre also complains that the District discriminated against her by creating a hostile learning environment, which does not seek relief for the denial of FAPE under the IDEA. As McIntyre alleges, she was repeatedly admonished that, due to her disability, she did not belong in the French Immersion Program.  And when McIntyre's peers repeatedly celebrated that teacher, who they complained was "fired because of the 504 kids," other teachers and administrators failed to intervene and, at least in one case, supported the other students' cause.  McIntyre's claim, which is based only on Section 504, does not indirectly seek relief under the IDEA.  Because McIntyre never sought or received "special education and related services," a hostile learning environment could not be said to have interfered with any such services.  Thus, and again, McIntyre does not seek the "only relief that an IDEA officer can give."  *Fry*, 137 S. Ct. at 753.

To conclude that exhaustion was required, the district court applied the approach that *Fry* rejected.  The district court determined that "the complaint is premised exclusively on educational harm to plaintiff," explaining that McIntyre alleged she "was denied educational opportunities" due to the District's failure to accommodate her disability.  But to require exhaustion in this context would expand the exhaustion requirement far beyond what *Fry* permits. Exhaustion should not be required merely because the plaintiff's complaint "has some articulable connection to the

education of a child with a disability" or else "falls within the general 'field' of educating disabled students." *Id.* at 752 n.3, 753. Instead, the proper inquiry looks to the substance of the IDEA's FAPE requirement, which the district court failed to do.

*Fry*'s suggested "clues" also support the conclusion that McIntyre's lawsuit does not seek relief for the denial of a FAPE under the IDEA.

McIntyre first seeks relief for the District's failure to implement testing accommodations. Under the ADA, such accommodations may be required for a variety of entities that offer professional licensing and credentialing exams. 42 U.S.C. § 12189; *see Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1160 (9th Cir. 2011). Accordingly, turning to *Fry*'s first hypothetical, a plaintiff could have brought "essentially the same claim" for testing accommodations "at a public facility that was not a school." Likewise, and turning to *Fry*'s second hypothetical, if the District used any sort of eligibility exam for its employees, "an adult at the school" could assert the same right to testing accommodations.

McIntyre also seeks relief for the District's failure to implement her emergency health protocol. We have explained that the ADA and Section 504 "include an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017). Accordingly, even an adult plaintiff may be entitled to receive assistance from others if such an accommodation is "reasonable." *See* 42 U.S.C. § 12112(b)(5)(A); 28 C.F.R. § 35.130(b)(7); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000),

*vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 1201 (2019) (holding that a teacher, an amputee, may be entitled to a classroom aide under the ADA). Thus, "an adult at the school" or "at a public facility that was not a school" could seek a similar accommodation as the emergency health protocol required by McIntyre's 504 Plan.

McIntyre finally seeks relief for the District's creation of a hostile environment at her school on account of her disability. Although we have not resolved the issue, every circuit to have done so has concluded that disability-based claims for hostile work environment are actionable under the ADA. *See Ford v. Marion Cty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (agreeing with the five other circuits to reach that same conclusion); *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003). We need not resolve that question here, but the weight of authority supports the conclusion that a hypothetical plaintiff could bring essentially the same claim in different circumstances.

As to *Fry*'s last clue, an examination of "the history of proceedings" belies any argument that McIntyre made a strategic choice to avoid exhaustion. Rather, throughout a prolonged dispute with the school regarding the implementation of McIntyre's 504 Plan, she sought to resolve the disputes through the District's non-IDEA procedures (such as by filing a formal "Bullying/Harassment" complaint) and without seeking an IEP or resorting to the procedural protections offered under the IDEA. Thus, this final clue supports the conclusion that the operative complaint does not seek relief for the denial of FAPE under the IDEA. *Cf. Paul G.*, 933 F.3d at 1101

(concluding that exhaustion was required where plaintiff "initially pursued remedies under the IDEA and after settlement switched gears to turn to other remedies").

In sum, the "crux" of McIntyre's complaint seeks relief for the denial of equal access to a public institution, rights protected by the ADA and Section 504. *Fry* 137 S. Ct. at 755. She complains that teachers and administrators tolerated a hostile learning environment on account of her disability, and that school staff failed to implement basic accommodations. Some of those accommodations were designed to ensure her safety, others an equal playing field at testing time. Although those events occurred in an educational setting, McIntyre was not required to exhaust her claims under § 1415(*l*) merely because those events have "some articulable connection to the education of a child with a disability." *Fry*, 137 S. Ct. at 753. Rather, exhaustion is required where the complaint seeks the "only relief that an IDEA officer can give"—that is, "relief for the denial of a FAPE" as the IDEA defines it. *Id.* McIntyre's complaint does not seek such relief. Thus, we hold that McIntyre was not required to exhaust her Section 504 and ADA claims under the IDEA's exhaustion scheme.[10] Accordingly, we reverse the district court's dismissal of McIntyre's First Amended Complaint for failure to exhaust administrative remedies under the IDEA.

---

[10] In light of our disposition, we see no need to address McIntyre's argument for a bright line rule that exhaustion is never required when a student is ineligible for services under the IDEA. *See D.R. v. Antelope Valley Union High School District*, 746 F. Supp. 2d 1132, 1145 (C.D. Cal. 2010).

## IV.  STATUTE OF LIMITATIONS AND TOLLING

The district court also dismissed McIntyre's First Amended Complaint on the alternative ground that her claims were barred by the applicable two-year statute of limitations because her claims were not entitled to minority tolling under Oregon Revised Statutes section 12.160(2) or equitable tolling.[11]  For the following reasons, we vacate the district court's order dismissing the complaint on these alternate grounds.

Initially, there seems to have been some confusion between the magistrate judge's F&R and the district court's order adopting it.  The F&R did not recommend that McIntyre's case should be dismissed because of the statute of limitations; rather, it only recommended holding that minority or equitable tolling did not apply to McIntyre's claims.  Indeed, in its motion to dismiss, the District conceded McIntyre's allegations included events within the two-year statute of limitations, including her entire senior year, the junior year walk-out, and the junior year ankle sprain.  Thus, to the extent that the district court's order construed the statute of limitations to be an alternative basis for dismissal, it simply misconstrued the F&R (and, along

---

[11] The parties agree here, as they did before the district court, that a two-year statute of limitations applies.  *See Duncan v. Eugene Sch. Dist. 4J*, 431 F. Supp. 3d 1193, 1202 (D. Or. 2020) (collecting cases, explaining "[t]he District of Oregon has generally held that for non-employment claims brought under the Rehabilitation Act or the ADA, the most analogous Oregon statute is Oregon Revised Statute § 12.110, which provides a two-year statute of limitations").  The district court apparently assumed without deciding that a two-year statute of limitations applied.  We see no need to resolve this issue because, even assuming a two-year statute of limitations applies, we vacate the district court's order for the reasons discussed in the text.

with it, the District's motion to dismiss).  And because the tolling issues were not an independent basis for dismissal, we vacate the district court's order.

In light of our analysis under *Fry*, we remand for further consideration whether McIntyre's claims are subject to minority tolling.  The magistrate judge and the district court's analysis of the minority tolling issue turned on their characterization of McIntyre's claims as seeking relief for the denial of FAPE.  F&R at 9 ("The parties have not cited to, and the Court is not aware of, any precedent evaluating whether Oregon's minority tolling statute, Or. Rev. Stat. § 12.160(2), applies to ADA or Rehabilitation Act claims alleging the denial of a FAPE.").  The District asserts that the same logic applies here, arguing that minority tolling is inapplicable where the IDEA provides a mechanism for relief by the parents when their child is a minor.  But as discussed, McIntyre's claims do not seek relief for the denial of FAPE under the IDEA.  Thus, on remand, the district court should reconsider whether any of McIntyre's claims are barred by the statute of limitations in light of our conclusion that McIntyre does not seek relief for the denial of a FAPE under the IDEA.

## V.  CONCLUSION

For the foregoing reasons, we reverse the district court's order dismissing the First Amended Complaint for failure to exhaust McIntyre's claims under the IDEA.  We also vacate the district court's order dismissing the complaint as alternatively barred by the statute of limitations, and we

remand with instructions to reconsider that ruling in light of our opinion.

**REVERSED in part, VACATED in part, and REMANDED.**

McIntyre shall recover her costs on appeal.