Filed 1/31/24  In re D.L. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. C.T., Defendant and Appellant. | G062708 (Super. Ct. No. 15DP0058) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Craig E. Arthur, Judge.  Affirmed.

C.T., in pro. per., for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

Mother appeals from an order of the juvenile court transferring educational rights over minor to another person. Minor, who is currently in the 8th grade, and who suffers from autism and attention deficit hyperactivity disorder, is severely behind his grade level in learning. Everyone supporting minor—the social worker, his school, the court appointed special advocate (CASA) representative, his counsel—all urged mother to put minor on an independent educational program (IEP). His mother resisted, then agreed, then failed to sign the necessary paperwork. After a six-month process of reassurances from mother that she would do it, she eventually refused, and the court granted Orange County Social Services Agency's (SSA) motion to transfer educational rights from mother to a CASA representative. Mother appealed.

Finding no abuse of discretion, we affirm. Mother's arguments on appeal are twofold. First, she contends there was false information associated with the IEP application, but she never explains what that falsehood was, nor does she cite anything in the record to support her claim. Second, she contends that minor's 504 plan was an adequate substitute.[1] However, as we explain in detail below, there is ample authority and evidence to support the court's contrary conclusion.

FACTS

Minor D.L. (and four siblings) were initially detained in 2015 as a result of physical abuse by mother—she struck her children with a computer cord. We chronicled the first two years of this case in a prior opinion. (*In re C.W.*, *et al.* (July 30, 2018, G055742) [nonpub. opn.].) We will not repeat that narrative here. In short, mother did not reunify, but the children were deemed not suitable for adoption and long-term foster care was adopted as the permanent plan. Of relevance to this appeal, in April 2016 it was

---

[1] A 504 plan outlines the specific accommodations and support services that a student needs to ensure equal access to education. (See 29 U.S.C. § 794.)

noted that "mother refused to approve a special educational assessment for [minor's sibling] and [minor], despite the boys exhibiting aggressive and disruptive behavior in placement and at school." (*Ibid.*) This refusal continued through August 2016, despite that "[a]ll three [siblings] continued to struggle academically and exhibited negative behaviors." (*Ibid.*) "Mother ultimately consented to educational assessments after the children's lawyer filed a petition to terminate mother as the children's educational rights holder." (*Ibid.*) We affirmed the court's finding that mother posed a substantial risk of detriment to her children's physical and emotional well-being if the juvenile court returned them to her care. (*Ibid.*)

Afterward, the court continued holding postpermanency review hearings. At one such hearing in January 2022, mother requested that the children be returned to her, which the court denied. Mother appealed, and in a prior opinion, we affirmed that order as well. (*In re N.T.* (Aug. 2, 2022, G061016) [nonpub. opn.].) Again, we will not rehash all of the facts relevant to that opinion. However, the 2022 opinion made the following observations, which are relevant to this appeal: "D.L. frequently refused to go to school, where he was in the eighth grade, and he struggled when he did go. Mother, who held education rights, was resistant to D.L. obtaining extra support at school to address his Autism and Attention Deficit Disorder. [SSA] recommended she request a student success team meeting and/or an individualized education program evaluation for D.L., but she refused because an evaluation had already been completed for D.L. His last educational assessment was conducted in May 2020, and he was assessed at a third grade level."

Shifting now to the record in this appeal, according to a report by minor's CASA representative, minor did very poorly in 8th grade, finishing with a 1.05 grade point average. According to the CASA representative, Minor "has had an educational assessment in the past, but his mother did not want to utilize those services." Minor's "previous social worker has requested multiple times for another educational assessment

3

from the current education rights holder (Mother) but she has refused." As a result, the CASA representative recommended "that the court limit the educational rights of [minor's] mother." The CASA representative requested that he be vested with minor's educational rights. Around the same time, the assigned social worker submitted a status review report stating, "The child's [Short Term Residential Treatment Program] team does believe that the child would benefit from an assessment. However, the mother continues to refuse to request the school to conduct a Student Success Team Meeting/IEP."

In response, in September 2022, mother filed an "Ex Parte Request to Deny Change [in] Educational Rights." At the hearing on September 7, 2022, SSA presented an ex parte request to limit mother's educational rights. The hearing was continued.

Meanwhile, in October 2022, a student success team meeting was held, and mother agreed to have minor assessed for an IEP. At a progress review hearing, the court noted, "The school district is waiting for signed documents from Mom and a psych eval the social worker is working on getting to them so that they can proceed." In light of mother's changed point of view, the court denied the request to transfer educational rights without prejudice.

However, by April of 2023, mother had not signed the necessary documents for the IEP to move forward. The court directed mother to sign the paperwork by April 19, or else it "would entertain a motion to reassign educational rights in order to make that happen."

In anticipation of a May 2023 status conference, the CASA representative filed a new report once again requesting that he be vested with minor's educational rights. The representative noted that an IEP assessment had been performed in February 2023, but mother still had not signed the necessary paperwork. Meanwhile, minor was failing almost all of his ninth-grade classes.

4

Around the same time, SSA filed an ex parte application to transfer minor's educational rights to the CASA representative. The reason for the application was that "the youth's IEP assessment and educational plan documents have not been signed by the mother despite several request[s] from school, Court, and [SSA] for the mother to sign the documents. The mother has continually stated she will sign the documents since the assessment was completed on February 15, 2023, but as of the writing of this report has failed to do so. As a last resort, Orange Unified School District Student and Community Services Coordinator . . . confirmed that a formal letter was sent via email and certified mail to mother on May 4, 2023, but no response has been received. This information has been confirmed by [the] Foster Youth Educational Liaison, . . . and Orange High School Staff."

At a hearing in June 2023, which mother failed to attend, the court granted the request to transfer minor's educational rights to the CASA representative. A representative of the school district noted that mother had changed her mind and would no longer accept the education services and supports that were being offered through an IEP. Mother appealed.

## DISCUSSION

According to mother, her "main contention is that misconstrued/fraudulent information was submitted to the trial court to deprive [her] of a fundamental right under the U.S. Constitution." However, she has not told us what that fraudulent information was, and, more critically, she has not cited to anything in the record to support her contention. As we explained to mother in our previous 2022 opinion, to demonstrate error in the trial court, the appellant must cite to facts in the record to support her contentions. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) In our own review of the record, we have found nothing to support mother's claim. Accordingly, we must reject it.

5

Mother's other claim is that she "endorsed a 504 plan for [minor] that specifically allowed him more times for testing, learning supports, etc . . . ." She seems to be arguing that the 504 plan was an adequate substitute for an IEP.

We review a court's decision to transfer educational rights for abuse of discretion. (*In re R.W.* (2009) 172 Cal.App.4th 1268, 1277.) That means we only reverse if the judge's decision was patently unreasonable.

An IEP and a 504 plan, though similar in some ways, are focused on different problems.

A 504 Plan is based on section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), which prohibits discrimination in the implementation of programs that receive federal funding. "[C]ourts have interpreted § 504 as demanding certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities." (*Fry v. Napoleon Community Schools* (2017) 580 U.S. 154, 160.) "Section 504's regulations gauge the adequacy of services provided to individuals with disabilities by comparing them to the level of services provided to individuals who are not disabled." (*McIntyre v. Eugene School Dist. 4J* (9th Cir. 2020) 976 F.3d 902, 911.)

An IEP is prescribed by the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.; IDEA), which guarantees disabled children a free appropriate education, commonly referred to as a FAPE. This requires schools to provide special education that is specifically tailored to the unique needs of the disabled child. (*McIntyre v. Eugene School Dist. 4J, supra,* 976 F3d at p. 910.) "The IDEA ensures that students receive a FAPE through the development of an [IEP], 'the centerpiece of the statute's education delivery system for disabled children.' [Citation.] An IEP is a comprehensive plan collaboratively prepared by a child's 'IEP Team' (which includes teachers, school officials, and the child's parents), and must be drafted in compliance with a detailed set of procedures. [Citation.] Among other requirements, the IEP must describe the 'special education and related services . . . that will be provided' so that the child may 'advance

6

appropriately toward attaining the annual goals' and, when possible, 'be involved in and make progress in the general education curriculum.' [Citation.] FAPE is a substantive requirement—an IEP must ultimately be 'reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.'" (*Ibid.*) Because of the specifically tailored nature of the IEP, "courts have recognized that a section 504 plan typically is not an adequate substitute for an IEP." (*Regional School Unit 51 v. Doe* (D.Me. 2013) 920 F.Supp.2d 168, 204.)

Here, there was a reasonable basis in the record that supported the court's decision that an IEP is in minor's best interest. The court heard from a representative of the Orange County Department of Education, who explained that "[t]he concern with [relying on a 504 plan] is that the 504 plan falls within the general education, accommodations that are provided to all youth just generally for . . . youth in education. [¶] The IEP . . . is more individualized, specialized supports that will address [minor's] specific needs and his disabilities to help him access his education. And it would provide very specific services specialized for him specifically." "[I]n not accepting the IEP, the concern is that he will continue to struggle academically and not receive the appropriate services that he should be receiving . . . through his educational plan as proposed by the District." Because there was a reasonable basis in the record to support the court's ruling, there was no abuse of discretion.

7

DISPOSITION

The order transferring minor's educational rights is affirmed.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.